BRANDON MANUF'G CO. v. PRIME. See Case No. 11,421.

---

## Case No. 1,811.

### In re BRANDT.

[5 Biss. 217.] [1]

Circuit Court, N. D. Illinois. Dec. Term, 1872.

HUSBAND AND WIFE — RENTS AND PROFITS OF WIFE'S REALTY—CONVEYANCE SHOULD EXPRESS SEPARATE USE — EQUITY WILL ALLOW SUPPORT TO WIFE.

1. In Illinois, since the act of 1861, where real estate is conveyed by the husband to a third party and by him to the wife, without consideration, the rents and profits still belong to the husband.

2. Property so conveyed is not acquired by her from a "person other than her husband" within the meaning of the act of 1861.

3. In order to fully protect the wife's rights in property conveyed to her, the deed must indicate the intent to convey to her for her sole and separate use.

4. A court of equity will, however, recognize the wife's equitable rights, and if these rents and profits are her only means of support, will allow her therefrom a reasonable support, in preference to the husband's creditors.

In bankruptcy.

Homer Cook, for bankrupt.

Ela & Parker, for creditors.

DRUMMOND, Circuit Judge. This is an application to the court under the second sec-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

tion of the bankrupt law [Act 1867; 14 Stat. 518] to revise the action of the district court in issuing an injunction against interference with the property of the alleged bankrupt, on the ground that his wife was entitled to the rents and profits of the property. Although there was a petition to declare him a bankrupt, he has not yet been adjudicated a bankrupt.

The facts, so far as it is material to state them, are that Ernst Brandt, against whom the petition in bankruptcy was filed, in March, 1871, while free from debt, or rather while free from any of the debts which gave rise to the proceedings in bankruptcy, transferred a lot of land in Chicago to a third person without consideration, in order that it should be conveyed to his wife. The lot was afterwards accordingly transferred to her; and the question made in the case is whether the rents and profits of the property belong to her or to the creditors of her husband.

There was in this case, no declaration in the deed that the wife was to hold the lot as her separate estate; but it was an ordinary deed from the husband to the grantee, and from the latter to the wife; and unless a different rule prevails where the husband conveys to the wife, directly or indirectly, and it matters not which, from that where another person conveys to her, the husband holds the rents and profits of the land by virtue of his relationship to the wife, jure uxoris.

Though a conveyance or gift of real property directly to the wife by the husband may be void at law, I think the authorities are clear that it is a good conveyance in equity, and will be protected by a court of equity. The general rule upon the subject in equity is, as I understand it, that in order to protect the right of the wife to property conveyed to her for her sole and separate use, there must be something in the deed clearly to indicate that intent. Otherwise the law presumes that the general rule prevails that the husband is entitled to the property, by virtue of his relation to his wife, as long as the marriage continues; and under our law if they have children born during coverture, and capable of inheriting, he becomes tenant by the courtesy.

The act of [February 21] 1861 [Laws 1861, 143] in relation to married women and their property seems to exclude the wife from the general operation of what is claimed to be a rule existing in other states in a conveyance of property by the husband to the wife, and thereby, as stated in the 838th section of the first volume of Bishop on the Law of Married Women, "whenever a husband makes a gift to his wife, whether with or without the intervention of a third person, who is named as a trustee, she takes a separate estate, since otherwise a transaction which was meant 'to have some effect, can have none in law or equity.'" Now the language of the act of 1861, so far as it applies to property obtain-

ed by the wife during coverture, declares in effect that she is only to enjoy it as her sole and separate property, provided she obtains it from a third person. It is this: "which any married woman during coverture acquires in good faith, from any person other than her husband;" and as the expression of one thing may be the exclusion of another, it is a fair inference, I think, that where she acquires property from her husband during coverture, it was not intended to be within the meaning of the law; that is, she was not then to have it as her sole and separate property. And the question is whether in this case she did acquire it from a person other than her husband; and it seems to me that she did not.

She took the deed from another person; but he was only the agent or trustee of her husband to make the conveyance. To all intents and purposes it must be treated the same in equity as though the husband had made a conveyance directly to his wife; and if that were so, then she would be excluded by the terms of the law of 1861. The case will then have to stand on the general principles of law and equity as decided by the courts; and as qualified, possibly, by the statute; because if elsewhere it has been decided that a gift of land from the husband to the wife was good in equity for her sole and separate use simply because it was made by the husband in general terms, yet it looks as though the legislature intended that the rule should be different in this state. I have not been able to examine all the cases that are cited here in note four to the 838th section of Bishop's first volume of the Law on Married Women, but still I think that these are the conclusions to be drawn from the authorities and from our own local statute; that in order that the wife shall be entitled to the separate enjoyment of the property owned by her it must clearly appear to be an inference from the nature of the case or from the conveyance, and that is not changed whether the conveyance is made directly from the husband to the wife or through the intervention of a trustee. Yet the question still remains, what are the rights of a married woman under such circumstances; and from the examination that I have given to the case I think it is the duty of a court of equity to protect the equitable rights of a married woman in a case like this, where the creditors come in and claim the rents and profits of the property during the life of the husband, or at any rate as long as the coverture exists. There is no question made but that this property, being conveyed to the wife, belongs to her, and his only right, it is conceded, is by virtue of the marriage relation. I think it is the duty of a court of equity to give her some sort of support out of this property, provided she has no other; and the creditors are not entitled to it all.

It is stated in the 1415th section of Story's Equity Jurisprudence (volume 2) that when the husband comes into a court of equity for relief as to any property which he claims in her right, he will be obliged to submit to the terms of the court, and make a settlement or provision for her. It is stated that the most the court will do under such circumstances is to secure the funds, allowing him, where it is deemed proper, to receive the income and interest. But where the husband refuses her maintenance or deserts her, the rule, as we shall presently see, is different. The like doctrine, subject to the like exceptions and limitations, is applied to assignees in bankruptcy, and to other general assignees claiming title under the husband. And in section 1421, and 1421a, the case is further stated: "Let us in the next place consider under what circumstances courts of equity will allow alimony to a married woman. The wife's equity already mentioned, as it is ordinarily administered against her husband, or against his particular assignee, for a valuable consideration, is by decreeing a settlement which secures to her a provision for her maintenance, commencing from the death of her husband. When the same equity is administered upon a general assignment of his property in bankruptcy, or otherwise, the settlement secures a present and immediate provision for the maintenance of the wife; because the general assignment of his property renders him incapable of giving her a suitable support. In each case the equity is administered out of the equitable funds which are brought under control of the court and are subject to its order. The object of the court, in each case, is to secure to her a maintenance out of such equitable funds, whenever she stands in need of it. So, if it is apparent from the state of the case, that the husband must remain in future without funds to maintain his wife, and there is an equitable fund belonging to her, within the reach of a court of equity, it will decree the income of the whole fund to be applied, primarily, to the maintenance of the wife during her lifetime, and after her death the principal to be divided among her children. Thus if the husband has become insolvent and has taken advantage of an insolvent act, which discharges his person but not his future effects, there a court of equity will secure the whole fund, in the manner above mentioned, for the benefit of the wife and children; for it is apparent that there is no certainty that he can ever have any means of supporting his wife and children. In this respect the case differs from that of a discharge under the bankrupt laws, for in the latter case the future effects of the bankrupt are not liable to his creditors. It is upon this difference that courts of equity will not give the whole fund to the wife and children in case of bankruptcy as they will in cases of insolvency."

Of course we have to act here upon some general rule which shall do equity. This is

a small matter, it is true. As I understand, it is only one lot, and the income of it is not large, and therefore, perhaps it is not of much consequence, in one respect. But although it is small, it may be said the wife should have a share, and that the creditors are entitled to only a share. But suppose the case of a very large estate belonging to the wife in this way, and where we will say the husband may be a tenant, by the courtesy, it becomes a life estate to him. Now if it were the only support of the wife and of the family, and the case coming before a court of equity for its determination, as in this bankruptcy proceeding, to say nothing about the right of the wife to make herself an actor in the case, to say that where the wife owns property amply sufficient to give her and her children a decent maintenance, it should be all taken away merely because her husband has been improvident, is contrary, it seems to me, to the genius of modern laws in relation to the property of married women, and for my part I am not willing to leave her thus unprovided for under such circumstances, but I should think it my duty as a chancellor, to give her something as a support out of this property, and not to give the creditors the whole.

It may be said it is her property, and justly belongs to her, but of what avail is it to her if she is not to have the use of it? She may live on in poverty, and may die at last merely because she is deprived of this property, and her husband may survive her, and this property may go to him still after her death, or to his creditors. Now my idea about it is that it is the duty of the court to ascertain what is the amount and value of this property, and to give to the wife a certain portion of the income, provided it appears this is her only means of support. If she is amply provided for otherwise, that would be a different thing perhaps, but if this is her only means of support, I think she is entitled to have something out of it, and the creditors are not entitled to all. I shall direct an order to be made to the district judge to this effect.